# EXHIBIT A

Michele Anderson-West (9249)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
michele@stavroslaw.com
*Attorneys for Plaintiff*

**IN THE SECOND DISTRICT COURT**
**WEBER COUNTY-OGDEN DISTRICT**

| | |
|---|---|
| LINDSAY TOULATOS, an individual, Plaintiff, v. QWEST CORPORATION, a foreign corporation and CENTURYLINK COMMUNICATIONS, LLC, a foreign corporation dba LUMEN, Defendants. | **COMPLAINT** |

Plaintiff Lindsay Toulatos ("Toulatos" or "Plaintiff") by and through her undersigned counsel, complains against Defendant Qwest Corporation ("Qwest") and CenturyLink Communications, LLC dba Lumen ("Lumen"), together referred to herein as Defendants, and for causes of action alleges as follows:

**PARTIES**

1. Toulatos is a resident of Weber County, State of Utah.

2. Defendant Qwest is a for profit foreign corporation doing business in Weber County, Utah.

3. Defendant Lumen is a dba of CenturyLink Communications and a for profit foreign corporation doing business in Weber County, Utah.

1

## JURISDICTION AND VENUE

4. All the acts and omissions giving rise to this action occurred within Weber County, Utah.

5. This Court has subject matter jurisdiction under Utah Code Ann. §78A-5-102.

6. Venue is proper pursuant to 78B-3-304 and 307.

7. At all times relevant herein, the individual Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein, in the course and scope of their employment with and for the corporate Defendants.

## FACTUAL ALLEGATIONS

8. Defendants are in the business of selling and maintaining telecommunication and technology services.

9. Toulatos is female and started working for Defendant in 2015 as a Senior Inside Relationship Manager ("Senior Relationship Manager") in Salt Lake City, Utah.

10. As a Senior Relationship Manager, Toulatos' job duties and responsibilities included, but were not limited to full sales cycle ownership for business-to-business customers, retention, customer support and maintenance, and yearly quotas.

11. In addition to Toulatos, there were 47 other employees working for Defendants as Inside Relationship Managers ("Relationship Managers") , 42 of which were men.

12. Each of Defendants' employees working as Relationship Managers were similarly skilled, used the same or similar effort and had the same or similar responsibilities.

13. The job duties and responsibilities associated with every Relationship Manager position included, but were not limited to, full sales cycle ownership for business-to-business

2

customers, retention, customers, new and assigned existing customer account maintenance, including set quota for new sales and retention activities.

14. Toulatos always met or exceeded Defendants' expectations as a Senior Relationship Manager.

15. In April 2019, Toulatos learned that Defendants paid new employees (all male) more that Defendants paid her. For example, W.Z., E.P., B.P., E.M. and N.H. all made more money than Toulatos did.

16. Toulatos spoke with her manager, Kyle Wilson about the pay disparity and he told Toulatos that Defendants would not be offering any merit-based salary increases.

17. Toulatos met with Danny Benedetti, West Region Sales Manager, and told him about the pay discrepancies between herself and male employees who had less experience and who were new to the company. In response, he advised Toulatos to work through her manager to request an "off cycle" pay increase.

18. Toulatos then met with Greg Fry, Director of Sales-Channel and Stacie Lindsey-Mintkin, Director Customer Support and asked for a salary review.

19. In response Fry and Mintkin told Toulatos they would look into it. Upon information and belief, however, neither Fry nor Mintkin looked into it.

20. That same day, Defendants moved Toulatos into a new role as Senior Inside Relationship Manager-Channel ("Senior Relationship Manager-Channel").

21. Toulatos was the only female out of 24 employees who worked for Defendants in the Inside Sales Channel Department.

22. Each of the employees working in Channel, including Toulatos, were similarly skilled, used the same or similar effort and had the same or similar responsibility.

23. The job duties and responsibilities associated with Channel included, but were not limited to, full sales cycle ownership for business to industry channel partners, retention, customer support, new and assigned existing customer account maintenance. Employees had a quota for new sales and retention activities.

24. Toulatos always met or exceeded Defendants' expectations as a Senor Relationship Manager-Channel.

25. In early May 2019, Toulatos submitted a written request for a raise to Don Guymon, Sales Manager, which included confirmation of her past achievements and excellent performance.

26. In September 2019, Toulatos asked Guymon about her pending request for a salary increase. Guymon told Toulatos that he did not even submit her written request and told Toulatos he would not submit her request because of her "write-up."

27. The write-up Guymon referred to occurred on or around September 24, 2019 because Toulatos, during a meeting discussing Defendants' work from home policy, she brought up compensation and benefits and also, because Toulatos left the video meeting early to take a sales call she had been expecting.

28. The write-up said that Toulatos behavior was not acceptable and it "seemed like" she was not interested and disrespectful for taking the sales call. Defendant called her disrespectful and disruptive and did not like the "tone of her voice."

29. Even though the men at the same meeting voiced similar concerns, Toulatos was the only one who was written-up and was the only female who attended that meeting.

30. Toulatos filed a complaint with Win Eckert, Defendants' Lead Corporate Ethics and Compliance Investigator. Upon information and belief, Eckert did not conduct any investigation as to Toulatos' complaints.

31. Notwithstanding making several thousand dollars less than her male counterparts, Toulatos continued to meet and exceed Defendants' expectations, which started to take a physical and emotional toll on Toulatos.

32. On or around October 22, 2019, Toulatos applied for and Defendants approved leave under the Family and Medical Leave Act.

33. On the day she started her leave, Toulatos' client list consisted of $19,000 in open opportunities, over 23 different customers and partners.

34. Toulatos returned to work on or around November 25, 2019 and learned that Guymon had reassigned and removed Toulatos from the records for her customers and partners and removed her sales that she secured prior to taking her FMLA leave.

35. In fact, the customers, partners and sales she had prior to taking her leave were all reassigned to male co-workers and was punitive. None of the accounts that Guymon removed or reassigned needed any work completed during Toulatos less than 4- week absence.

36. Defendants did not allow Toulatos to return to her same position she held prior to taking FMLA leave and the reassignment and removal of sales cost Toulatos commissions of approximately $12,000.

37. Toulatos asked Guymon why he reassigned and moved her customers and records. In response, Guymon told her that he was allowed to move customers and partners at will and said it was approved by the Sales Manager West Region, Danny Benedetti.

38. Toulatos filed a second complaint with Ethics and Compliance that same day. In response, Benedetti gave her commission on 50% of her projects for which she was entitled to receive 100% commission.

39. Defendants' pattern and practice of paying its male employees more than female employees from the start, perpetuates the environment where women, like Plaintiff, are always paid less than their male counterparts.

40. During the same timeframe as above, the male employees were all hired with a higher starting salary and, because raises are given based on a percentage of salary, the male employees continue to make significant more money than Plaintiff.

41. Defendants paid Toulatos approximately $55,000 less her male counterparts during her 4.5 years of employment.

42. Toulatos resigned on December 17, 2019.

**FIRST CAUSE OF ACTION**
*Violation of the EPA*

43. The preceding paragraphs are incorporated herein by reference.

44. The EPA requires employers to pay employees the same wages it pays to "the opposite sex" for equal work that requires "equal skill, effort and responsibility and which [is] performed under similar working conditions."

45. Defendants paid Toulatos less money than the male employees, even though their respective jobs required equal skill, effort and responsibility.

46. The working conditions for Toulatos and similarly situated male employees were basically the same-notwithstanding, Defendants paid the male employees more than Toulatos.

47. The wage disparity was not based on a merit system.

48. The wage disparity is not based on a system that measured earnings by quantity or quality of production.

49. The wage disparity is not based on a differential factor.

50. The work Toulatos and the male employees performed was substantially equal as to skill, effort and responsibility.

51. The work Plaintiff performed required the same skill as the men who were paid more than her.

52. The work Plaintiff performed required the same effort as the men who were paid more than her.

53. The work Plaintiff performed required the same responsibility as that required of the men who made more than her.

54. Here, the actual content of the job performed by male employees and Plaintiff was the same.

55. Toulatos suffered damages as a result of Defendants' willful misconduct in denying her the same wages as paid to the male employees in an amount to be determined at trial, but not less than $50,000.

56. Defendants' conduct was knowing and willful thus entitling Toulatos to a punitive damages award to be determined by the jury.

57. Defendants, as a result of the conduct displayed, is required to reimburse Toulatos for her costs and attorneys' fees in bringing this action.

## SECOND CAUSE OF ACTION
*FMLA Discrimination and Retaliation*

58. The preceding paragraphs are incorporated herein by reference.

59. Generally, an employee is eligible for leave under the FMLA, 29 U.S.C. §2611(2), after being employed during at least twelve (12) months and having not less than 1250 hours during such qualifying period.

60. At all times relevant to this complaint, Defendants were Toulatos' "employers" within the meanings of the FMLA.

61. At all times relevant to this complaint, Toulatos was an "eligible employee" of Defendants within the meaning of the FMLA.

62. Toulatos was eligible for leave under the FMLA, requested leave under the FMLA and Defendants approved her leave under the FMLA.

63. The FMLA prohibits an employer from discriminating and/or retaliating against an employee for requesting FMLA leave or engaging in another protected activity.

64. Toulatos engaged in a protected activity when she took leave under the FMLA from approximately October 22, 2019 through November 25, 2019.

65. Defendants retaliated against Toulatos, in violation of the FMLA, when it did not restore her to her previous position, put her commissions under names of male employees, and significantly reduced her clientele.

66. Defendants discriminated against Toulatos because she exercised her right to take leave under the FMLA.

67. Defendants are liable to Toulatos for all damages associated with the wrongful conduct including, but not limited to, compensatory damages, liquidated damages, costs, reasonable attorneys' fees, and other remedies available under law and equity.

## DISCOVERY DESIGNATION

The damages in this case fall between $50,000 and $300,000 and designated as Tier 2 for discovery purposes.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants as to each cause of action as follows:

a. For judgment against Defendants for violation of the EPA and FMLA;

b. For compensatory damages, including pecuniary and non-pecuniary damages;

c. For liquidated damages in an amount proven at trial;

d. For punitive damages in an amount to be proven at trial;

e. Prejudgment and post-judgment interest as applicable;

f. For attorney fees and costs of suit, including expert witness fees;

g. For other such relief as is fair and equitable.

DATED this 16th day of December 2021.

          /s/ Michele Anderson-West
STAVROS LAW, P.C.
*Attorneys for Plaintiff*



**CONSTABLE REITZ, SALT LAKE COUNTY CONSTABLE**

7026 South Commerce Park Drive #101  Midvale, UT 84047

(801) 255-5468

info@constablereitz.com

checkservice@constablereitz.com

http://www.constablereitz.com

Route: 01
(801) 758-7604

Stavros Law P.C.  *
Michele Anderson-West
8915 South 700 East, Suite 202
Sandy, UT  84070

Docket: **977633**  Received: **12/21/2021**
Reference: **977633**  Case No.: **210906435 JV**  Date Completed: **12/22/2021** at **2:10 PM**

Plaintiff: Lindsay Toulatos
Defendant: Centurylink Communications, LLC
Serve To: Centurylink Communications, LLC
Location: 1108 E. South Union Avenue, Midvale, UT  84047

| Documents | Qty | Cost Per Unit | Total |
|---|---|---|---|
| Summons & Complaint | 1 | $20.00 | $20.00 |
| | | **Subtotal:** | **$20.00** |
| | | Additional Fees: | |
| | | **Total:** | **$20.00** |
| | | Total Payment(s): | |
| | | Balance Due: | **$20.00** |

**Thank You!**

Payment due net 15 days. Make check payable to Constable Reitz and mail it to the address above. There is a $35.00 fee for checks that are returned for non-sufficient funds.
**FEIN:** 83-3674843

Date Invoiced: 12/23/2021



# CONSTABLE'S RETURN

Docket #: 977633

Reference #: 977633

Lindsay Toulatos VS Centurylink Communications, LLC
Case # **210906435 JV**

**I, Keith Alarcon**

being first duly sworn on oath and say: I am a duly appointed Private Investigator, Salt Lake County, State of Utah, a citizen of the United States, over the age of 21 years at the time of service herein, and not part of or interested in the within action.
I received the within and hereto annexed,

**Summons & Complaint**

on **Dec 21, 2021**, and served the same upon

**Centurylink Communications, LLC**

a within named **Defendant** in said article(s) by serving a true copy of said article(s) for the Defendant with

**CT Corporation System (Registered Agent)**

a person of suitable age and discretion at

**1108 E. South Union Avenue, Midvale, UT 84047**

the usual place of business.

Served on **Dec 22, 2021** at **2:10 PM**.

I declare under criminal penalty of the State of Utah that the foregoing is true and correct. I further certify that at the time of service of the said article(s), I endorsed the date and place of service and added my name and official title thereto.

Private Investigator      A129031
Constable Reitz, Salt Lake County Constable
7026 South Commerce Park Drive #101
Midvale, UT 84047 (801) 255-5468

**TOTAL CHARGES: $20.00**

**NOTES**

Served Dani Snow, Agent for CT Corporation System, Registered Agent for Centurylink Communications, LLC.

Court: OSDC



# CONSTABLE'S RETURN

Docket #: **977632**
**Lindsay Toulatos VS Qwest Corporation**
Case # **210906435 JV**

Reference #: **977632**

I, **Keith Alarcon**

being first duly sworn on oath and say: I am a duly appointed Private Investigator, Salt Lake County, State of Utah, a citizen of the United States, over the age of 21 years at the time of service herein, and not part of or interested in the within action. I received the within and hereto annexed,

**Summons & Complaint**

on **Dec 21, 2021**, and served the same upon

**Qwest Corporation**

a within named **Defendant** in said article(s) by serving a true copy of said article(s) for the Defendant with

**CT Corporation System (Registered Agent)**

a person of suitable age and discretion at

**1108 E. South Union Avenue, Midvale, UT 84047**

the usual place of business.

Served on **Dec 22, 2021** at **2:10 PM**.

I declare under criminal penalty of the State of Utah that the foregoing is true and correct. I further certify that at the time of service of the said article(s), I endorsed the date and place of service and added my name and official title thereto.

Private Investigator A129031
Constable Reitz, Salt Lake County Constable
7026 South Commerce Park Drive #101
Midvale, UT 84047 (801) 255-5468

**TOTAL CHARGES: $46.00**

## NOTES

Served Dani Snow, Agent for CT Corporation System, Registered Agent for Qwest Corporation.

Court: OSDC

DEC 21 2021

977632

Michele Anderson-West (9249)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
michele@stavroslaw.com
*Attorneys for Plaintiff*

S/C

Date 22-Dec-21 Time 2:10 PM
R@ 1108 E South Union Ave
Upon Dani Snow
V Alarcon A129031
Deputy - Private Investigator - Process Server
Constable Kurtz, Salt Lake County
7026 Commerce Park Dr. #101, Midvale, UT
84047  (801) 255-5468

## IN THE SECOND DISTRICT COURT
## WEBER COUNTY-OGDEN DISTRICT

| | |
|---|---|
| LINDSAY TOULATOS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>QWEST CORPORATION, a foreign corporation and CENTURYLINK COMMUNICATIONS, LLC, a foreign corporation dba LUMEN,<br><br>Defendants. | **SUMMONS**<br><br>Case No. 210906435<br><br>Judge Jennifer Valencia |

THE STATE OF UTAH TO THE ABOVE-NAMED DEFENDANT:

QWEST CORPORATION
c/o CT CORPORATION SYSTEM
1108 EAST SOUTH UNION AVENUE
MIDVALE, UTAH 84047

YOU ARE HEREBY SUMMONED and required to file an answer in writing to the attached Complaint with the Clerk of the Second District Court, 2525 Grant Avenue, Ogden, Utah 84401 and to serve upon or mail to Michele Anderson-West, Plaintiff's attorney, 8915 South 700 East, Suite 202, Sandy, Utah 84070, a copy of said answer within 21 days after service of this Summons upon you. Judgment by default will be entered against you if you fail to answer in writing.

DATED this 21st day of December 2021.

/s/ Michele Anderson-West
Michele Anderson-West
STAVROS LAW P.C.