IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| **LINDSAY TOULATOS**, <br><br> Plaintiff, <br><br> v. <br><br> **QWEST CORPORATION**, a foreign corporation, and **CENTURYLINK COMMUNICATIONS, LLC**, a foreign limited liability company dba **LUMEN**, <br><br> Defendants. | **MEMORANDUM DECISION & ORDER GRANTING DEFENDANTS' [26] MOTION FOR SUMMARY JUDGMENT & DENYING PLAINTIFF'S [27] MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 1:22-cv-00006-CMR <br><br> Magistrate Judge Cecilia M. Romero |

The parties have consented to the jurisdiction of the undersigned, including entering a final judgment pursuant to 28 U.S.C. § 636(c) (ECF 11). Before the court are Plaintiff Lindsay Toulatos' (Plaintiff or Ms. Toulatos) Motion for Summary Judgment (Plaintiff's Motion) (ECF 27), and Defendants Qwest Corporation (Qwest) and CenturyLink Communications' LLC dba Lumen (CenturyLink) (collectively, Defendants) Motion for Summary Judgment (Defendants' Motion) (ECF 26) (collectively, the Motions).[1] The court also considers the Oppositions (ECF 29; ECF 43) to the Motions, Defendants' Reply in support of their Motion (ECF 44) and exhibits to the briefing (ECF 28; ECF 30; ECF 33). The court heard oral argument from the parties at a hearing on the Motions on April 24, 2024 (ECF 47), issued a ruling granting the Motions as to certain time-barred claims,[2] and took the remaining claims under the Family and Medical Leave Act (FMLA) and

---

[1] Plaintiff brought suit against Qwest and its related entity CenturyLink. While Defendants point out that Qwest, not CenturyLink was Plaintiff's employer, for the purposes of the pending Motions, Defendants do not make any arguments as to that issue (ECF 26 at 2 n.1). Therefore, the court will collectively refer to these entities as Defendants.

[2] On August 16, 2022, the above-captioned case entitled *Toulatos v. Qwest Corporation et al.*, No. 1:22-cv-00006-CMR (*Toulatos I*) was consolidated with another case filed in this court entitled *Toulatos v. Qwest Corporation et al.*, No. 1:22-cv-00061-CMR (*Toulatos II*) (*Toulatos I*, ECF 15). The Complaint in this case was initially filed in state court on December 17, 2021 (ECF 5 at 1) and later removed from state court on January 11, 2022, asserting only

Equal Pay Act (EPA) under advisement. In addition to the ruling issued at the hearing, and for the reasons stated herein, the court hereby GRANTS Defendants' Motion and DENIES Plaintiff's Motion.

## I.    FACTUAL BACKGROUND[3]

Defendants are in the business of selling and maintaining telecommunication and technology services (ECF 26 ¶ 1). Plaintiff is female and started working for Defendants in Salt Lake City on or around October 19, 2015, as a Senior Inside Relationship Manager (ECF 27 ¶ 1). When Plaintiff was hired, her starting annual base salary was $45,011.20 with an opportunity to earn up to an additional $25,000 in commission (ECF 43 ¶ 35; ECF 27 ¶ 3). During her employment, Plaintiff only received one raise of two percent (ECF 26-2 ¶ 10). Plaintiff's initial job included selling new services to existing accounts (ECF 26-3 at 23; ECF 43 ¶ 9). In mid-2019, Plaintiff was transferred into a new group (ECF 26 ¶ 12). As part of this change, Plaintiff was assigned to work with Channel Managers in assisting partners and their customers and open

---

claims under the FMLA and the EPA (*id.* at 6–9). The complaint in *Toulatos II* was later filed on April 27, 2022, asserting two additional claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* (Title VII) (*Toulatos II*, No. 1:22-cv-00061-CMR, ECF 2). However, as this issue was not disputed by the parties (ECF 43 at 2 n.1), and finding no genuine issue of fact, the court found that Plaintiff's Title VII claims are time barred under 42 U.S.C. § 2000e-5(f)(1) and *Cerroni v. Smith's Food & Drug Centers, Inc.*, No. 2:23-cv-00005-JCB, 2023 WL 3467466, at *1 (D. Utah May 15, 2023) (holding that the time a Plaintiff has to file a suit upon the issuance of a Right to Sue Letter starts when the notice of the availability of the letter on the Equal Employment Opportunity Commission (EEOC) public portal is electronically sent to Plaintiff's counsel). The parties here did not dispute the relevant dates— Plaintiff received notice of the issuance of her Right to Sue Letter via email from the EEOC following an administrative dismissal of Plaintiff's Title VII claims on January 26, 2022, and Plaintiff then filed the relevant cause of action under Title VII on April 27, 2022 (*see* ECF 26-3 at 99–102). This resulted in Plaintiff's Title VII claims being filed beyond the ninety (90) day limitation set forth in 42 U.S.C. § 2000e-5(f)(1). On this basis, and on Plaintiff's concession, the court ruled that Defendants were entitled to summary judgment as to the Title VII claims and GRANTED Defendants' Motion as to those claims (ECF 47). The court thus herein focuses its analysis on Plaintiff's remaining FMLA and EPA claims.

[3] The following facts are either undisputed or portrayed in the light most favorable to Ms. Toulatos. Unless otherwise noted, the facts are drawn from Defendants' Motion (ECF 26), the Declaration of Erin Toliver (Toliver Declaration) (ECF 26-2), the Declaration of Daniel Benedetti (Benedetti Declaration) (ECF 26-4), Plaintiff's Motion (ECF 27), Ms. Toulatos' Deposition (Toulatos Deposition) (ECF 28-4), Don Guymon's Deposition (Guymon Deposition) (ECF 28-5), Plaintiff's Opposition to Defendants' Motion (ECF 43), or Defendants' Reply in support of their Motion (ECF 44).

fec5a74

"opportunities" were assigned to Plaintiff (*id.*). When the potential for a sale arose, this "became an 'opportunity' in Defendants' records" (ECF 26 ¶ 10). Not all opportunities resulted in a sale (ECF 26 ¶ 11). In this new position Plaintiff received the same base pay and was eligible for commissions (ECF 26-3 at 26). The commissions amount fluctuated monthly (*id.*).

On October 8, 2019, Plaintiff made a written complaint to Defendants' Integrity Line alleging discriminatory behavior which included "[g]ender based harassment" going back to February/March of 2019 (ECF 26 ¶ 7; ECF 26-3 at 38:6–14). Ms. Toulatos also raised concerns about her pay to her manager Kyle Wilson (Wilson) in February/March of 2019 (ECF 27 ¶ 17). Ms. Toulatos then met with Wilson's manager, Daniel Benedetti (Benedetti) and subsequently, Benedetti's managers, Greg Fry (Fry) and Stacie Lindsey-Mintkin (Mintkin) (*id.* ¶¶ 17, 20, 22). Ms. Toulatos told Fry and Mintkin that she was the lowest paid employee on the floor, including those with less tenure and experience (ECF 27 ¶ 23). Ms. Toulatos did not hear back from Fry or Mintkin (*id.* ¶ 25).

Thereafter, Don Guymon (Guymon) became Plaintiff's manager in August 2019, to whom Ms. Toulatos again raised her pay disparity concerns and made a written request for a pay increase (ECF 27 ¶¶ 26–27; ECF 28-5 at 6). Ms. Toulatos asked Guymon again in late September 2019 for an update on his investigation into the unequal pay and her request for a salary increase equal to what Defendants paid its male employees (ECF 27 ¶ 28). Guymon testified that he knew of an email in which Ms. Toulatos raised her concern as to the pay disparity, he shared the email with Benedetti, who was Guymon's manager, but that it was a decision he had no part in so he did not investigate further (ECF 28-5 at 6–7).[4]

---

[4] Plaintiff cites to her Declaration in support of her Motion (ECF 28-1 ¶ 52) and alleges that Guymon told her that he did not submit her written request for a pay increase (*see* ECF 27-1 ¶ 30). As explained below, Plaintiff's Statement of Facts (SOF) 30 and paragraph 52 from the Declaration are not supported by the record so the court does not consider this fact as stated by Plaintiff. Plaintiff's Motion also argues that Defendants did not take any measures to investigate

Plaintiff asked for paid time off from October 22–28, 2019 (ECF 26 ¶ 19), and later applied for and Defendants approved leave under FMLA through November 24, 2019 (*id.*). Plaintiff was on continuous approved leave from October 22, 2019 through November 24, 2019, a period of four weeks and five days (ECF 43 ¶ 19).

Like other sales employees, Plaintiff executed a Sales Compensation Agreement, the latest being the CenturyLink 2019 Sales Compensation Agreement (2019 Sales Agreement), which Plaintiff signed on April 1, 2019, and was in effect through Plaintiff's resignation in December 2019 (ECF 26 ¶ 13; ECF 26-4). The 2019 Sales Agreement indicates that opportunities could be "transferred without approval by or notice" of an employee "except as explained in the Leave of Absence section" of the agreement (ECF 26-4 at 37–38). The relevant section of the 2019 Sales Agreement's Leave of Absence policy states that an employee who takes a leave of absence of 12 weeks or less, "For credit under the SOV[5] Component, account reassignment can occur after 4 weeks. Where significant activity had occurred prior to reassignment, Transactions should be reviewed for splitting credit" (ECF 26-4 at 52). Plaintiff's opportunities were reassigned before four weeks passed (ECF 44 ¶ 4).

At the time that Plaintiff took leave, she was assigned to thirty opportunities (ECF 43 ¶¶ 23–24). During her leave, only two of Plaintiff's opportunities that were reassigned to other

---

the pay disparity between her and her male counterparts (ECF 43 ¶ 32; *see also* ECF 27 ¶ 30). To substantiate this, Plaintiff cites to her deposition testimony (*id.*; *see* ECF 26-3 at 47:10–12, 48:11–14). The deposition testimony she cites to does not support the position advanced in the pleadings. The first cited part of her testimony only states that she *believes* Defendants willfully violated the EPA because she did not get a raise after raising the pay disparity claim and the second states it is her "*opinion*" that pay practices were not appropriately reviewed (*id.*) (emphasis added). *Argo v. Blue Cross & Blue Shield of Kansas, Inc.,* 452 F.3d 1193, 1200 (10th Cir. 2006) ("[A]t the summary judgment stage, 'statements of mere belief' in an affidavit must be disregarded." (quoting *Tavery v. United States,* 32 F.3d 1423, 1427 n.4 (10th Cir. 1994))).

5 SOV stands for "Sales Order Value" and is a credit component to the pay of employees that could be earned through the sale of specific products and other eligibility criteria (ECF 26-4 at 31–32).

employees actually closed, resulting in commissions of approximately $4,500 in total—split between two employees (ECF 26 ¶ 27). During this same time period, a male employee also took extended leave, and his opportunities were reassigned to other active employees (ECF 43 ¶ 28). Upon returning from leave, Plaintiff was assigned twenty-one (21) opportunities that were previously assigned to her, and nine others that were reassigned to other employees pursuant to the 2019 Sales Agreement for commission splitting purposes (ECF 26 ¶ 24).[6] For the latter nine opportunities, she was asked to inquire with the other coworkers on how to best close the sale (*id.*). Plaintiff resigned her employment with Defendants on December 17, 2019 (*id.* ¶ 8). She worked the morning that she gave notice and left in the afternoon (*id.*).

## II.     EVIDENTIARY OBJECTIONS

The court first addresses the evidentiary objections of the parties. "'[T]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury' in some form." *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006) (quoting *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir.2006)). "The requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form." *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016) (quoting 11 James Wm. Moore et al., *Moore's Federal Practice–Civil* § 56.91 (3d ed. 2015)). "Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment

---

[6] Plaintiff's Opposition to Defendants' Motion disputes this fact by referencing her Declaration stating as of the date of her resignation she had not been reassigned all opportunities (ECF 43 ¶ 24; ECF 43-2 ¶ 30). As addressed in the below Evidentiary Objections Section, Plaintiff's Declaration contradicts her sworn deposition testimony and is therefore not credible material evidence.

mill.'" *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (quoting *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998)).

### A. Ms. Toliver's Declaration is Admissible Evidence.

The parties both in briefing and at the hearing argued that a ruling on the admissibility of Declaration of Erin Toliver (Toliver) (Toliver Declaration) (ECF 26-2) was needed for resolving the Motions. Plaintiff argues that Defendants improperly rely on the Toliver Declaration "for the truth of the matter" as to Defendants' pay structure and reasons for why Plaintiff's male coworkers had higher salaries than Plaintiff because the statements in the Toliver Declaration were not made upon her personal knowledge (ECF 43 at 2–3). Plaintiff repeatedly cites to Federal Rule of Civil Procedure 56(c)(4), *Felkins v. City of Lakewood*, 774 F.3d 647 (10th Cir. 2014), and *Healthbanc International, LLC v. Synergy Worldwide, Inc.*, No. 2:16-cv-00135-JNP-PMW, 2019 WL 3500896 (D. Utah Aug. 1, 2019), in support. In response to Plaintiff's evidentiary objection, Defendants argue in their Reply (ECF 44) that the Toliver Declaration is admissible evidence because Ms. Toliver is a representative of Defendants, and a corporate representative can obtain the necessary personal knowledge required by Rule 56(c)(4) by reviewing "the relevant company records" (*id.* at 10). Defendants cite to *Nuss v. Utah Orthopaedic Assocs., P.C.*, No. 2:09-CV-647 TS, 2011 WL 3328708 (D. Utah Aug. 2, 2011), and *Vakas v. Transamerica Occidental Life Ins. Co.*, 242 F.R.D. 589 (D. Kan. 2006), to support this assertion. Having reviewed the relevant caselaw, the court agrees with Defendants.

Rule 56(c)(4) requires that "affidavits or declarations . . . used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Personal knowledge means the affiant's testimony is based on the affiant's actual

perceptions or observations as opposed to 'statements of mere belief.'" *Nuss*, 2011 WL 3328708, at *1 (quoting *Argo*, 452 F.3d at 1200).

Plaintiff's cases generally support the assertion that a declaration for purposes of a motion for summary judgment must be made upon personal knowledge of the matters being asserted. *See Felkins*, 774 F.3d at 650 ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge." (quoting Fed. R. Civ. P. 56(c)(4))); *see also Healthbanc*, 2019 WL 3500896, at *12 ("Rule 56(c)(4) explicitly and unequivocally states that affidavits submitted in opposition to a motion for summary judgment must be based on personal knowledge."). However, the cases cited by Defendants make clear that affidavits submitted by corporate representatives can be admissible evidence. *Nuss*, 2011 WL 3328708, at *1 (holding that the personal knowledge requirement can be met when someone with knowledge of the company reviews and takes action as to the company's records such that the testimony is based on the declarant's actual perceptions or observations); *see also Vakas*, 242 F.R.D. at 591 (holding that a company representative's affidavit to a motion for summary judgment is compliant under Rule 56(e) when the statements therein "are not made upon flimsy 'beliefs' or 'feelings,' but are statements about the records maintained by defendant and the facts those records put forth").

The Toliver Declaration states that Toliver is the Vice President of Global Compensation and Payroll for Defendants and that she is familiar with the relevant payroll and compensation policies and procedures (ECF 26-2 ¶ 2). The Toliver Declaration also states that Toliver reviewed the relevant compensation matters relating to Plaintiff and other employees for Defendants (*id.*) ("I am currently the Vice President [of] Global Compensation and Payroll for the Defendants. In my role, I oversee all compensation and payroll systems, and I am familiar with their payroll and compensation policies and procedures."). The statements in the Toliver Declaration are made not

merely from "flimsy beliefs or feelings," but based on factual records. *See Vakas*, 242 F.R.D. at 591 (internal quotations omitted). Unless otherwise noted, the court therefore overrules Plaintiff's objection and considers the Toliver Declaration in resolving the Motions.

**b. The Opportunity Spreadsheet is Admissible as a Business Record.**

Another evidentiary objection made by Plaintiff at the hearing relates to a spreadsheet attached to the Declaration of Benedetti (Benedetti Declaration) (ECF 26-4 at 86) addressing the opportunities assigned to Plaintiff at the time of her return from FMLA leave. In particular, the Benedetti Declaration states that the week after her return, "all of Plaintiff's opportunities had been returned to her work, including 21 active opportunities solely in her name, and 9 additional opportunities that had been 'reassigned' or put in other employees' names during her extended absence . . . ." (*see* ECF 26-4 ¶ 17). At the hearing, Plaintiff argued that this spreadsheet constituted inadmissible hearsay as it did not fall within the hearsay business records exception. *See* Fed. R. Evid. 803(6). Plaintiff's counsel also stated this was the first time Plaintiff was seeing the spreadsheet and questioned the authenticity of the spreadsheet. The spreadsheet is labeled as Exhibit 6 in the Benedetti Declaration, and Defendants claim to have provided the initial spreadsheet to Plaintiff on December 5, 2019 "in response to a wage claim" filed by Plaintiff (ECF 26-4 ¶ 19).

At the hearing, the court addressed with Plaintiff that no motion to strike was filed nor addressed in the Opposition (ECF 43) and asked about any contravening evidence to the spreadsheet. While Plaintiff acknowledged no objection was made to the spreadsheet content, Plaintiff argued that at no point did the Benedetti Declaration state the spreadsheet was authentic nor that it was kept in the ordinary course of business.

Rule 803(6) of the Federal Rules of Evidence "provides an exception to the hearsay rule for records 'kept in the course of regularly conducted business activity . . . if it was the regular practice of that business activity to make the . . . record.'" *United States v. Yeley-Davis*, 632 F.3d 673, 678 (10th Cir. 2011) (quoting Fed. R. Evid. 803(6)). "A foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court." *United States v. Johnson*, 971 F.2d 562, 571 (10th Cir. 1992) (quoting *FDIC v. Staudinger*, 797 F.2d 908, 910 (10th Cir. 1986) (affirming a district court determination that "the nature of the documents and the circumstances under which the investors received them were sufficient to establish their status as business records")).

Here, the court finds foundation for the admissibility of the spreadsheet "by considering the nature of [Defendants'] business and the nature of the attached records." *Nuss*, 2011 WL 3328708, at *1. At the hearing, the spreadsheet was proffered to derive from a computer software that Defendants regularly use to keep track of opportunities possessed by sales employees like Plaintiff (ECF 47). Defendants are in the business of selling services, and this spreadsheet is an example "of typical records created and kept as part" of keeping track of opportunities to different employees in the sales business. *See Nuss*, 2011 WL 3328708, at *1. The Benedetti Declaration explains that the facts set forth therein are made based on personal knowledge, as Benedetti was one of Plaintiff's supervisors (ECF 26-4 ¶¶ 1–2). As evidenced by an email dated October 31, 2019 (*id*. at 67), Benedetti spoke with Plaintiff's manager about Plaintiff's opportunities when she went on leave (*id.* ¶ 12). As further verification, Benedetti references an email dated November 26, 2019 (*id*. at 70–71), where he also spoke with Plaintiff's manager, Guymon, about the status of those opportunities with Plaintiff's return following a discussion with Plaintiff upon her return (*id.* ¶¶ 14–16). Another email verifies the initial spreadsheet was provided to Plaintiff on December

5 (*id.* at 77–80) and updated in the spring of 2020 in response to a wage claim (*id.* ¶¶ 17, 19). It has therefore been established this is a business record.

Although Plaintiff disputes previously receiving the spreadsheet, she acknowledges she received a copy with the Motions, and Benedetti has sworn under penalty of perjury the spreadsheet was produced to Plaintiff prior to the Motions being filed. Additionally, Plaintiff has failed to file a motion to strike, or other credible evidence to dispute that this is a legitimate business record. *Cf. Nuss*, 2011 WL 3328708, at *2 (denying a motion to strike affidavit under Rule 803(6)). Accordingly, the court considers the spreadsheet for resolving the Motions.

### c. Plaintiff's Wage Disparity Statements are Inadmissible Hearsay.

Plaintiff has two declarations. One was filed in support of her opposition to the Defendants' Motion for Summary Judgment (Opposition Declaration) (ECF 43-2) and the other was filed in support of her Motion for Summary Judgment (Support Declaration) (ECF 28-1). In the Support Declaration and Ms. Toulatos' deposition (Toulatos Deposition), Plaintiff offers statements learned through conversations with coworkers that coworkers received a higher income than her. (ECF 28-1 ¶¶ 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35; *see also* Plaintiff's Statement of Facts (Plaintiff's SOF), ECF 27 ¶¶ 6, 8, 10, 12, 14, 16; Toulatos Deposition, ECF 26-3 at 27–29; 32–53). Defendants object to Plaintiff's factual statements about the wages of coworkers arguing this is hearsay because Plaintiff is referring to conversations with male employees she claims were paid more than she was to prove she was paid less than males. For each male employee she states substantively the same thing: that the male employee told her at some point during her employment that his salary was more than hers.

These conversations, and their substance, are out of court statements brought in for the truth of the matter asserted and are therefore hearsay. *See* Fed. R. Evid. 801(c)(2) (defining hearsay

as a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement"); *see also Taft v. Utah Dep't of Agric. & Food*, 622 F. Supp. 3d 1073, 1079 n.15 (D. Utah 2022) (noting hearsay "'cannot be considered on a motion for summary judgment' unless an exception applies" (quoting *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)). Plaintiff does not argue a hearsay exception applies and failed to submit a reply to her summary judgment motion addressing this evidentiary objection. The court therefore is unable to find a hearsay exception applies. Because there is no exception for these statements, Plaintiff's above-referenced statements regarding pay disparity are inadmissible hearsay.[7]

### d. Defendants' Pay Equity Audit May Be Hearsay and Violates the Best Evidence Rule.

Defendants assert they conducted a privileged gender pay equity audit in 2019, which analyzed pay by grades and jobs to identify any outliers based on gender as compared to similarly situated peers (ECF 26 ¶¶ 32–34). Defendants offer that Plaintiff was not identified as an outlier in that audit (*id.* ¶ 32).

Plaintiff objects to the use of Defendants' Statement of Facts (Defendants' SOF) 32–34 and the Toliver Deposition referencing this information (ECF 26-2 ¶¶ 7–8). Plaintiff argues that the discussed pay equity audit had never been raised before (ECF 43 at 11), and Defendants respond that Plaintiff did not request such information (ECF 44 at 8). While that may be true, the pay equity audit was also not produced to the court. Federal Rule of Evidence 1002 provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." While there may be exceptions to allowing

---

[7] In the Opposition Declaration, to address employee comparator information of Defendants, Plaintiff refers to social media information, such as LinkedIn profiles of coworkers to try to dispute Defendants' information (ECF 43-2 ¶¶ 50–77). Defendants object to the admissibility of this evidence (*see, e.g.*, ECF 44 at 11). Plaintiff makes no argument as to how any of this evidence is admissible, but regardless, the court does not consider this information and thus does not rule on these objections.

such information, Defendants have not addressed any such exceptions. *See Montoya v. Romero*, 956 F. Supp. 2d 1268, 1279 (D.N.M. 2013) (addressing circumstances in which other evidence of the original's contents is admissible). It is also not clear if the information is hearsay and if there is an exception to the hearsay rule.

Because the content of the pay equity audit is material information which Defendants failed to produce to the court and does not address if such information is hearsay, the court does not consider this information.

### e. Plaintiff's Declarations Conflict with her Deposition Testimony.

Defendants argue Plaintiff is attempting to create a sham issue of fact given discrepancies between the Toulatos Deposition (ECF 26-3) and her Declarations on material issues. The first concern is in response to Defendants' SOF paragraphs 21 to 26, wherein Plaintiff disputes that upon Plaintiff's return to work on November 25, 2019, her supervisors immediately started the process of getting Plaintiff back to work, made sure she had opportunities to work on, and within a week of her return, returned to Plaintiff her work, including 21 active opportunities solely in her name and nine additional opportunities that had been reassigned in her absence, and also worked to ensure employees that helped during her leave were treated fairly (ECF 26 ¶¶ 21–26).

In the Opposition Declaration, Plaintiff states that she did not have any work to do from November 25, 2019 through her resignation on December 17, 2019 (ECF 43-2 ¶ 33), she was not given any structure or help (*id.* ¶ 22), was told her base accounts would be returned but some of the "large deals" she cultivated prior to FMLA leave would stay with a co-worker (*id.* ¶ 24), she spoke with her coworkers that had some of her opportunities assigned to them and they would keep those or didn't know they had to return them (*id.* ¶¶ 28–29), and she denies the discussion

with her manager about the status of what was being returned to her (*id.* ¶¶ 19, 23). The date of the Opposition Declaration is March 21, 2024.

In the Toulatos Deposition, Plaintiff testifies she was shown an email from Benedetti informing Plaintiff of the 21 opportunities that would be returned to her as well as the nine that would be shared between her and her coworkers West Hollinger (West), Nate Hirshi (Nate), and Grayson Little (Grayson) (ECF 26-3 at 55–56). Plaintiff also acknowledged in her deposition that some opportunities came back to her (*id.* at 55:16–18; *id.* at 56:2–5). Finally, in the Toulatos Deposition, Plaintiff confirms she did not speak with Grayson and West (*id.* at 57:8–15). All of this is contrary to the testimony in the Opposition Declaration (ECF 43-2 ¶¶ 19, 27, 30).

In addition, in Plaintiff's SOF 19 (ECF 27 at 4 ¶ 19) she asserts by way of the Support Declaration (ECF 28-1 ¶¶ 37–41) that after making a request for a wage increase to Wilson, her manager in the February or March time frame, she learned he did not forward her claims of discrimination and unequal pay to HR or do anything to address her wage increase. This statement conflicts with her testimony in the Toulatos Deposition. During the Toulatos Deposition, when asked what evidence Plaintiff had that Defendants did not make a determination that their pay practices complied with the law, Plaintiff responded that she did not see any documents regarding her pay after her complaints, and it was her "opinion" that Wilson (and Benedetti and Guymon), did not go through the appropriate actions to have her pay reviewed (ECF 26-3 at 48:11–14). She also testified she did not have any information on what processes Defendants go through to determine whether the practices are legal or not (*id.* at 48:19–23), and she had no information that the law was ignored when setting her pay (*id.* at 48:15–18). This testimony is not consistent with the Support Declaration (ECF 28-1 ¶¶ 40–48).

The court must therefore consider whether the Opposition and Support Declarations are sufficient to create a triable issue of fact. The Toulatos Deposition is dated April 28, 2023 (ECF 26-3) during which Plaintiff was represented by counsel. The Opposition Declaration is dated March 21, 2024 (ECF 43-2). The Support Declaration does not have a date but was submitted to the court on October 13, 2023 with Plaintiff's Motion for Summary Judgment (ECF 28-1).

The court will disregard a contrary statement if it "constitutes an attempt to create a sham fact issue." *Burns v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275, 1282 (10th Cir. 2003) (quoting *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986)). "Relevant factors the Court will consider when determining whether the statement presents a sham issue include '[1] whether the [declarant] was cross-examined during his earlier testimony, [2] whether the [declarant] had access to the pertinent evidence at the time of his earlier testimony or whether the [declaration] was based on newly discovered evidence, and [3] whether the earlier testimony reflects confusion which the [declaration] attempts to explain.'" *Bristol Co. L.P. v. Bosch Rexroth Inc.*, 758 F. Supp. 2d 1172, 1183 (D. Colo. 2010) (quoting *Burns*, 330 F.3d at 1282).

Applying these factors, the court finds the contradictory statements were provided solely in response or support of dispositive motions in an attempt to create a sham fact issue. Plaintiff was represented by counsel at the Toulatos Deposition, who could have asked clarifying questions. Moreover, the information provided in the Opposition and Support Declarations cover topics addressed in the Toulatos Deposition, and Plaintiff makes no claim as to confusion and does not even address why the testimony is inconsistent. The court therefore does not consider the above identified conflicting information as they contradict the testimony in the Toulatos Deposition.

### III.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,'" and a "'dispute about a material fact is genuine[ ] . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Hall v. Weber Cnty.*, No. 1:20-cv-158-HCN, 2024 WL 1307164, at *1 (D. Utah Mar. 27, 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In evaluating a motion for summary judgment, the court "view[s] the facts in the light most favorable to the nonmovant and draw[s] all reasonable inferences in the nonmovant's favor." *Baker v. Walmart Inc.*, No. 1:22-cv-00111-JCB, 2024 WL 1719899, at *1 (D. Utah Apr. 22, 2024) (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)). "When the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Id.* (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). The adverse party "must [then] set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

## IV.   DISCUSSION

**A. Defendants are Entitled to Summary Judgment on Plaintiff's FMLA and EPA claims.**

1.   <u>Plaintiff's FMLA claim fails for failing to provide evidence of willfulness.</u>

While Plaintiff's FMLA claim relates to retaliation as she alleges that she was not restored to the same position when she returned from FMLA leave, Defendants argue Plaintiff's FMLA claim fails because it is undisputed she cannot demonstrate a willful violation to invoke the three-year statute of limitation period. The dates regarding the FMLA claim are not disputed. At latest, December 5, 2019, is the date Plaintiff learned about the return of her opportunities and commission splits after coming back from FMLA leave (ECF 26 ¶ 24 (explaining Plaintiff was notified in an email on December 5, 2019 of the opportunities that would be returned to her); ECF 43 at 26). This action was removed from Utah State Court on January 11, 2022 (ECF 2), but the case was originally filed in Utah State Court on December 17, 2021 (ECF 5 at 1). This means the present action was filed more than two years after the alleged violation for which this action was brought. The fact the claims were brought outside of the general two-year limit was also conceded by Plaintiff at the hearing and in Plaintiff's Opposition to Defendants' Motion (ECF 43 at 37). It is therefore undisputed that the willful standard under the relevant statute of limitation is applicable here.

Generally, a claim under the FMLA must be filed "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1); *accord Bass v. Potter*, 522 F.3d 1098, 1103 (10th Cir. 2008). However, a Plaintiff may still bring a FMLA claim outside of this two-year limit, but within three years of the last event constituting the alleged violation for which such action is brought. 29 U.S.C. § 2617(c)(2). When this is the case, a plaintiff must prove that the violation was willful as set forth in 29 U.S.C. § 2615.

*See id.*; *see also Bass*, 522 F.3d at 1104 ("For § 2617(c)(2)'s three-year statute of limitations to apply, a plaintiff must demonstrate that his employer 'knew or showed reckless disregard' for whether its conduct was prohibited by the FMLA." (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988))).

Plaintiff may prove the alleged FMLA violation was willful by demonstrating that her employer "'knew or showed reckless disregard' for whether its conduct was prohibited by the FMLA." *Schofield v. Maverik Country Store*, 26 F. Supp. 3d 1147, 1157 (D. Utah 2014) (quoting *Bass*, 522 F.3d at 1104). "If an employer acts reasonably or even 'unreasonably, but not recklessly,' in determining its obligations under the FMLA, its conduct is not willful." *Id.* at 1105 (quoting *Bass*, 522 F.3d at 11034). As such, the court first determines whether Plaintiff has shown a willful FMLA violation. The court holds she has not.

To make this showing, Plaintiff argues Defendants reassigned the opportunities she had before applying for FMLA prior to the four weeks provided in the 2019 Sales Agreement, and then those opportunities were not returned to her upon her return from FMLA leave (ECF 43 at 35–36). At the hearing, Plaintiff specifically argued that Defendants showed reckless disregard by the reassignment of Plaintiff's opportunities as this conduct was premature in relation to Defendants' leave of absence policy. The court disagrees as Plaintiff's reading of the 2019 Sales Agreement is inconsistent with its plain language.

The 2019 Sales Agreement states that any opportunities that Plaintiff had at the time of her initial leave could have been "transferred without approval by or notice" of Plaintiff "except as explained in the Leave of Absence section" of the agreement (ECF 26-4 at 38). The 2019 Sales Agreement's Leave of Absence section states that an employee who took a leave of absence of 12 weeks or less, after four weeks of leave could have their opportunities reassigned and where

"significant activity had occurred prior to reassignment, Transactions should be reviewed for splitting credit." The 2019 Sales Agreement thus speaks of reassignment after four weeks for the purpose of calculating commissions and splits, *i.e.*, the employee needs to be gone for more than four weeks before commission splits can occur. There is nothing about this language that precludes Defendants from resigning opportunities prior to four weeks for managing of the accounts. As argued at the hearing by Defendants, even if Plaintiff was not taking FMLA leave and was only absent for a few days, it would not make sense for a company to prevent itself from furthering an active opportunity if it required someone to do more work during such an absence. It is reasonable for Defendants to manage their sales accounts while an employee is on leave and Plaintiff has not offered any authority to the contrary. *See, e.g.*, *Bruno v. Sonalysts, Inc.*, No. 3:01CV1501 MRK, 2004 WL 2713239, at *5 (D. Conn. Nov. 23, 2004) ("Employers need a certain amount of flexibility to organize their companies efficiently, and courts should hesitate before second-guessing their day-to-day personnel decisions.").

Plaintiff herself recognizes Defendants had the right to ask other employees to help in her absence but took issue with them getting her pay (ECF 26-3 at 49:13–18). Plaintiff thus fails to establish that Defendants acted knowingly or with reckless disregard in transferring Plaintiff's opportunities or that this conduct was prohibited by the FMLA. Plaintiff does not cite to any authority to demonstrate otherwise. Thus, there is no genuine dispute as to any material fact as to Plaintiff's failure to show that Defendants knowingly or recklessly disregard the FMLA when transferring Plaintiff's opportunities prior to Plaintiff's FMLA leave under the 2019 Sales Agreement.

The court next turns to Plaintiff's argument that Defendants willfully violated the FMLA by failing to return her to her previous status as set out by the FMLA (ECF 43 at 36). As addressed

above, the Opposition Declaration and the Toulatos Deposition on this issue conflict, and the court has found the Opposition Declaration to be an attempt to create a sham issue of fact, which the court will therefore not consider. What is considered are the undisputed material facts, which are that in the Toulatos Deposition testimony, Plaintiff admits to having received at least 21 opportunities back and that nine opportunities were reassigned to other sales coworkers to work on while she was out on leave that were eligible for a commission split for which she was asked to communicate with the coworkers to figure out the best way forward (ECF 26-3 at 52–56; *see also* ECF 26-4 at 77). In her Deposition, Plaintiff admits she failed to follow-up with the co-workers on the specifics of the split and instead resigned (ECF 26-3 at 57:8–15). Plaintiff also argues that putting this burden on her violates the FMLA (ECF 26-3 at 57).

Plaintiff fails to establish Defendants acted knowingly or with reckless disregard in violating the FMLA by splitting nine of the opportunities in compliance with the 2019 Sales Agreement and in directing Plaintiff to discuss prior open opportunities with the other employees when those opportunities were assigned. Plaintiff cites no case law to guide the court in how this would meet the willful or reckless standard. The court has determined there is not a violation of the FMLA when an employee returns from FMLA work and is returned to a different position if it is "undisputed that [employee's] compensation, benefits, seniority, and physical office remained the same when [employee] returned to work," and the employer need only to "reasonably believe[] that [the positions] were equivalent" to refute willful violation. *See McCully v. Am. Airlines, Inc.*, 695 F. Supp. 2d 1225, 1249 (N.D. Okla. 2010). There is no evidence that Defendants believed they were moving Plaintiff to a different position or that having Plaintiff split commissions violated the FMLA, or even was a different position. Rather, these were all always opportunities which may or may not result in a sale.

Further, as the court has previously explained, the court considers the evidence provided by Defendants that demonstrates Plaintiff was returned to her same title, with her same base and commissions (ECF 26-3 at 51:21–23), she was assigned her 21 opportunities back, and nine opportunities were going to be split with coworkers Nate, Grayson and West (ECF 26-4 ¶ 17; ECF 26-3 at 55:9–15 (Plaintiff acknowledging she had a "restoration of a few deals that [she] was allowed to work going forward")). Nothing in the record establishes that Plaintiff would not receive the nine opportunities back after talking with other employees, or even be ineligible for commission splitting. Even if coworkers told Plaintiff that they planned on continuing to work a reassigned opportunity, that determination from a coworker is different than Defendants acting knowingly or with reckless disregard in violation of the FMLA. Nothing in the record shows that Defendants acted knowingly or with reckless disregard as to whether their conduct violated the FMLA. Thus, there is no genuine dispute as to any material fact as to Plaintiff's failure to show that Defendants knowingly or recklessly violated the FMLA under this second theory.

The court notes that even if it were to consider the merits of the FMLA claim and the *prima facie* case, it would not result in a different conclusion. To establish an FMLA retaliation claim, which is subject to the *McDonnell-Douglas* framework, Plaintiff must prove that she "(1) availed herself of a protected right under the FMLA; (2) was adversely affected by an employment decision; and (3) there was a causal connection between the two actions." *King v. IC Grp., Inc.*, 701 F. Supp. 3d 1186, 1216 (D. Utah 2023) (quoting *Robert v. Bd. of Cnty. Comm'rs of Brown Cnty.*, 691 F.3d 1211, 1219 (10th Cir. 2012)). If Plaintiff establishes her prima facie case, the burden then shifts to Defendants to "offer a legitimate, non-retaliatory reason for the employment action," and the burden then shifts back to Plaintiff to demonstrate that the "proffered reason is pretextual." *Id.* (quoting *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th

Cir. 2006)). With regard to the adverse employment decision, generally "only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action." *Id.* (quoting *Ford v. Brennan*, No. 2:15-cv-00539-BSJ, 2018 WL 11341632, at *4 (D. Utah Aug. 27, 2018)). However, "'a mere inconvenience or an alteration of job responsibilities' does not constitute an adverse employment action." *Id.* (quoting *EEOC v. C.R. England*, 644 F.3d 1028, 1042–43 (10th Cir. 2011)).

While it is undisputed that Plaintiff received back 21 opportunities solely in her name and with respect to nine additional opportunities, she was to inquire about splitting the commissions, there is no evidence that she would not have received the split, or the split would be significantly less than she was entitled to. In fact, Plaintiff acknowledged the commission amount fluctuated monthly. Plaintiff failed to talk with the employees to coordinate the split and instead resigned her employment. As such, Plaintiff has not demonstrated an adverse employment action because she has not demonstrated a reassignment with significantly different responsibilities or a significant change in benefits.

Accordingly, Plaintiff has failed to show that Defendants acted knowingly or with reckless disregard as required for her FMLA claim to survive summary judgment.

2. Plaintiff's EPA claim also fails for a lack of willfulness.

An employer violates the EPA when it discriminates "between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which" wages are paid to employees of the opposite sex. 29 U.S.C. § 206 (d)(1). Under the EPA, Plaintiff "has the burden of proving that the employer paid unequal wages for jobs performed under similar working conditions that required substantially equal skills, effort, and responsibility. If the plaintiff meets

this burden, the burden shifts to the employer to prove that one of the four exceptions in the Act justifies the wage differential." *Sinclair v. Auto. Club of Oklahoma, Inc*., 733 F.2d 726, 728 (10th Cir. 1984) (quoting *EEOC v. Central Kansas Medical Center,* 705 F.2d 1270, 1272 (10th Cir. 1983), *rejected on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)). "The statute of limitations for the [EPA]is two years, unless a plaintiff shows an employer acted willfully." *Lee v. Salazar*, 787 F. Supp. 2d 1267, 1285 (D. Utah 2011). "The United States Supreme Court has stated 'willful' means 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.* (quoting *McLaughlin*, 486 U.S. at 133). As discussed below, it is undisputed the three-year willful period applies, the court thus considers whether Plaintiff has shown a willful violation by Defendants.

Like the dates for the FMLA claims, the dates relevant to the EPA claim are also not in dispute. Plaintiff filed her Complaint alleging a claim under the EPA on December 17, 2021 (ECF 5 at 1). Plaintiff resigned from her employment on December 17, 2019 (ECF 26 ¶ 8). Although Plaintiff technically filed her claim one day within the two-year statute of limitations, she was not employed by Defendants for that period and thus any damages under the regular statute of limitations would be minimal. *See Sinclair*, 733 F.2d at 729 ("Under the applicable statute of limitations . . . an employee may recover unpaid wages for up to three years before the filing of suit if the violation was willful but only for two years otherwise."). Counsel for Plaintiff conceded to having brought her EPA claim outside of the general two-year limit and that the three-year period is applicable.

Like the FMLA claim, Plaintiff fails to show that Defendants "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [EPA]." *See Lee*, 787 F. Supp. 2d at 1285 (quoting *McLaughlin*, 486 U.S. at 133). Even drawing all permissible inferences

in favor of Plaintiff, the admissible evidence in the record does not show that Defendants acted knowingly or with reckless disregard in violation of the EPA. As addressed in the Evidentiary Objections Section above, the court does not consider the evidence that Plaintiff offered to show male employees were paid more than Plaintiff as it is inadmissible hearsay. Plaintiff's deposition testimony also demonstrates that she admitted to not having any evidence of willfulness, other than Defendants not changing her pay when it was brought to their attention that she was paid less than others (ECF 26-3 at 47–48).

Plaintiff also argues that "Defendants' inaction when" she "lodged her complaint of wage disparity" demonstrates Defendants knew or showed a reckless disregard of an EPA violation (ECF 43 at 39). The undisputed facts do establish that Plaintiff made complaints about her pay and what she thought was a pay disparity and that there was a lack of communication on the result of those complaints from Plaintiff's supervisors. Notwithstanding, Plaintiff has not presented credible material facts to demonstrate that Defendants took no action upon her complaints. In fact, her concerns were communicated between managers. Guymon testified that he knew of an email in which Ms. Toulatos raised her concern as to the pay disparity, he shared the email with Benedetti, who was Guymon's leader, but that it was a decision he had no part in so he did not investigate further (ECF 28-5 at 5–7). It is therefore not accurate to say no action was taken.

The fact that Plaintiff's pay was not changed, or that Plaintiff's *opinion* was that the appropriate actions were not taken by Defendants, does not create a material issue of fact. *Argo*, 452 F.3d at 1200 ("[At] the summary judgment stage, 'statements of mere belief' in an affidavit must be disregarded."). Plaintiff has not put forth credible evidence to demonstrate Defendants knew or showed a reckless disregard for an EPA wage disparity. Accordingly, the applicable statute of limitations period is two years, which is also the relevant period for calculating damages.

*See Weidenbach v. Casper-Natrona Cnty. Health Dep't*, 563 F. Supp. 3d 1170, 1181 (D. Wyo. 2021). Plaintiff has not carried her summary judgment burden of showing a genuine dispute of material fact to suggest any EPA violation was willful. Because Plaintiff has conceded the three-year period is necessary in order to have damages in an applicable period, Defendants are therefore entitled to judgment as a matter of law on Plaintiff's EPA claim.[8]

## V.      CONCLUSION AND ORDER

For the reasons herein, the court GRANTS Defendants' Motion for Summary Judgment (ECF 26) and DENIES Plaintiff's Motion for Summary Judgment (ECF 27). Judgment shall enter in favor of Defendants.

IT IS SO ORDERED.

DATED this 24 September 2024.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah

---

[8] While Defendants moved for summary judgment based on the statute of limitations and the merits arguing Plaintiff cannot meet her *prima face* case, because Plaintiff has failed on the limitations period, the court does not find it necessary to address the merits arguments.